Good morning. May it please the court. I'm Daniel Kappen. I represent the appellant Kendrick Begay. I'd like to reserve three minutes of my time for rebuttal. With the court's indulgence, I'd like to start discussing the chief two issues in this appeal with an analogy. I'd like the court to imagine a jigsaw puzzle, and the puzzle shows an image of a dark night. There's a car and a truck on an abandoned road in a desolated area. A man is standing next to the passenger window of the car, and he's holding a rifle which is pointed toward the passenger window. There is one piece missing from the puzzle, the piece that shows the man's face. Next to the incomplete puzzle are two pieces which could fit exactly into that open space. One piece shows a face that is calm, thoughtful, deliberate, apparently carrying through a pre-planned, premeditated plan. The alternative piece shows a face that is flushed, outraged, in a fury, apparently in the grip of an uncontrollable passion. Argument one is a sufficiency case in this appeal. The question in terms of the analogy you left out in your puzzle is the person standing by the window went back and got a rifle. Correct. You didn't put that in there. Your Honor, when you step away from that missing piece, you look at all the circumstances, and that's one of them. So the question to ask is in terms of the sufficiency argument, when you look at all the facts that surround that moment in time and that unknown state of that person's emotions, what does that say about it? Now, the testimony was that Mr. Begay... Suppose he's getting all worked up while he's walking back and forth. Beg your pardon? Suppose that he is making up his mind to do something to kill him while he's walking back. That's the reason he walked back to get the rifle. Correct. That was the government's assertion to the jury. The question in terms of sufficiency is what evidence is there in this record before this jury that allowed them to determine that's what happened beyond a reasonable doubt? The sufficiency argument rests on the proposition that there was nothing in this record, and perhaps the strongest... Is that a reasonable inference? Because there's nothing upon which to base that inference beyond a reasonable doubt, Your Honor. Walking back to get a rifle when you're... What's the reason you get the rifle? Because there was a provocation that occurred in the minute or so he stood by that window, apparently talking to the person in the passenger seat. Where is the evidence that... Your Honor, Judge Reinhart authored a decision several years ago called Vasquez-Chan. It was cited as a central component of a case we cited in a 28-J letter called Nevels, recently decided by this court, a sufficiency case. Vasquez-Chan makes the important point here that where there is one construction of the evidence which would show the person guilty of the crime charged and an alternative construction of the same evidence which would show the person not guilty of the crime charge, the crime charge here being premeditated murder, the government must present evidence sufficient to allow the jury to determine beyond a reasonable doubt that that alternative explanation, the one that shows him not guilty of the offense charged, is not the true explanation. The facts in this case that the with the heat of passion theory, puzzle piece number two, the government did not present any evidence which allowed the jury to reject that alternative explanation. And under that principle that underlay the Nevels decision and preceded the Nevels decision in Vasquez-Chan and prior cases that Vasquez-Chan cited is the essential flaw in the sufficiency of the government's... Can you walk back to get the rifle? Your Honor, the evidence is perfectly consistent with the words were exchanged in that brief confrontation that provoked him and sent him into an uncontrollable passion, the type which would cause a reasonable person to kill. Yeah, but you're not denying that he fired the shot. Correct. And you're saying, well, you know, we don't know what he looked like. You have nothing to show he was in the heat of passion. I realize the government has to show premeditation. So the government shows the circumstances and even one is he went and picked up a rifle and he plugged these people from a good distance, took a good aim and killed these people. And the question to me is, is that enough to show a premeditated killing? And there is some facts and inferences from those facts that seem to suggest to me that it's enough for the jury to decide. Jury didn't have to decide premeditated murder, but it did. But it was given an option of second degree murder, which it rejected. So your theory is not based on anything that's in the record. It seems to me it's based on what shall I say, what you're trying to glean as circumstantial evidence when the circumstances may not support the conclusion. Your Honor, the strongest evidence that Mr. Begay was provoked by something that occurred when he stood for a minute or so by the window of that car was that he got a rifle and shot into the car eight or nine times. That is evidence that there was provocation because this court may not presume that he did that because of a premeditated plan. You may not presume the highest level of homicide. I understand that. The question is, was there circumstances in the evidence that showed enough for the jury to find that he thoughtfully premeditated killing people? Absolutely not, Your Honor. Argument one, of course, is the sufficiency that there was nothing that allowed them to determine that beyond a reasonable doubt. You say he shot from quite a distance. The testimony was he shot from three to four feet away. There was no other testimony about the distance. And he's an experienced shooter. There's testimony that he went shooting, apparently recreationally, with witness Lauren Clark three to four weeks earlier, and that he had a collection of some guns, multiple rifles. Now, ask yourself why, if he shoots eight or nine times at a person three to four feet away with a high-powered rifle, he apparently missed two to three times. How does an experienced shooter who is not in the grip of an uncontrollable fury miss somebody three to four feet away under those circumstances? So your theory is there's a heat of passion. Is that right? Our theory is, in terms of argument one, sufficiency, the jury did not have evidence to reject the heat of passion alternative explanation. In terms of argument two, the failure to give the alternative instruction, the lesser-included instruction of voluntary manslaughter, that that evidence was perfectly consistent with that, and under the case law, that had to be given. It was an abuse of discretion not to give that. And the basis for that is the fact that he shot multiple times and not directly at him. The basis for that is a number of things. Look at the essential facts of what happened. He's driving around late at night. It's the middle of the night. He runs across a car. He gets the car to pull off. He walks over to the side of the car without a weapon. Apparently, he stands there for a minute or so. It's reasonable to assume there was a brief conversation. Then suddenly, after that brief conversation, he goes back to his truck, gets a rifle, goes back and shoots eight or nine times at the passenger, accidentally hitting the driver as well. Now, looking at that factual scenario, it's consistent with provocation. Is there some evidence of one of the witnesses, I forget which, that he walked back and forth calmly? No. Your Honor, the government asserted that in its responsive brief. They used the word calmly, I believe, seven times. They used the word methodically seven times, and then they tossed in thoughtfully and something else. The one witness, I forget if it was the man or the woman, I think the man said calmly. No, absolutely not, Your Honor. Lauren Clark, the only witness who testified to anything up to and including the never used the word calmly. He never used anything like the word calmly. The excerpt in the reply brief shows exactly what he said, and the record is before you. The complete record is in the excerpts. That was simply something that was made up, and I think it's indicative of the strength of this argument, that the government was forced to make up facts to show, to attempt to show there was evidence of premeditation. Not only that, but when it gave its closing argument, the government was forced to misstate the law of premeditation because they knew, consciously or unconsciously, they ran into the fact that they had produced no evidence of premeditation. So the way they got around that was they told the jury, well, he shot several times at a person a few feet away in a car with a high-powered rifle. That shows intent to kill. That means he premeditated. Of course, legally it doesn't mean he premeditated, but they had to say that because they never had conviction for killing the woman as opposed to killing the man because, as I understand it, the bullet that killed her went through him. Correct. Your Honor, the government got an instruction on transferred intent, and we haven't challenged that. So the intent was to kill him, and intent we're not challenging because intent would go to malice of forethought and second-degree murder. We are challenging the crime of only crime. The crime charge, the crime of conviction, was first-degree premeditated murder. Now, of course, the mental state, the mental process, is what constitutes premeditation, and the government is not expected to come forward with direct evidence, a movie showing someone's mental processes. They must look to the circumstances. They must look to evidence of motive, manner of the killing, and any planning. However, there was never any theory, even a theory, as to motive. The government did not even say to the jury, this is why he did this, and that's not disputed in this appeal. As far as the manner, the government has argued there was time to premeditate. Your Honor pointed out he walked back to the truck, back to the car. The testimonies in terms of how far apart they were is that it was not as far apart as standing in the courtroom in Phoenix Federal District Court. It was not as far apart as the witness stand and the podium where the lawyer was standing, so not a great distance. But we know the case law is a very brief time is sufficient to premeditate, so there was time to premeditate. But the law is quite clear, and it's intuitively obvious, that time to premeditate is a necessary but not a sufficient evidentiary basis for finding actual premeditation. What is the evidence of actual premeditation? The time is not enough. The additional stratagem, of course, the government comes up with to argue about the manner of the killing is to talk about the calm manner and the methodical manner, but all of that has no basis in the record. Now, there's another point that Your Honor mentioned earlier. You said that perhaps the jury didn't have to find premeditation. Now, I certainly, well, I don't want to misstate what you said, but I want to stress that the alternative basis for reversal in this case, argument two, has to do with the failure to give the lesser included instruction of voluntary manslaughter. And the law is very clear that if there is any rational basis for a jury to find that lesser offense, any rational jury could have found the lesser offense, then that instruction should have been given, and that's a basis for reversal. I'd like to reserve the balance of my time for rebuttal. Thank you, Captain. Did you completely misrepresent the calmly argument? No, but I'd like to introduce myself. My name is Ann Sheel. I'm an assistant United States attorney with the District of Arizona. With regard to the sufficiency of the evidence argument, no, I don't believe that we did. The question was, did you misrepresent the fact that there was testimony about his walking calmly? No, the testimony was that, with regard to his demeanor, was when they were flagging, the defendant flagged the car down that was carrying the victims. They passed two times. We're talking about the evidence that he walked calmly over to the car and back. Well, the evidence is that he walked. He didn't run. The evidence that he walked calmly is the question. No. There's no specific statement from Lauren. He walked calmly, but the brief does repeatedly say calmly. I think calmly is a fair inference from the evidence that was established at trial, because the evidence at trial shows that the defendant stopped the car, passed him. It doesn't show whether he walked hurriedly, agitatedly, calmly. There isn't anything that shows how he walked. Only that he walked and did not run, did not stomp. He walked. He walked, okay. He made no statements to the people in the car. He made no statements to the people in which car? In his truck. Lauren Clark, the individual that testified, said that he asked the defendant why he was stopping the car on the road after they had passed him two times. The defendant flashed his lights at these people, clearly wanting them to stop. When they stopped on the road, Lauren Clark asked why he was doing that. Defendant gave no answer. After the shooting, Lauren Clark asked what he was doing, and he responded. Answer really is, yes, there is no evidence that he walked calmly, but it's repeatedly said in the brief. I don't know how that answers Judge Hugg's question about whether you misrepresented that he walked calmly. No, I think it's a fair inference from the evidence that was established at trial, that there was no arguing, that the witnesses heard no arguing at the car when he was speaking with the victims. That he walked back, that he didn't run, that he didn't, there's no evidence that he was agitated in any sort of way, that he originally went over to the driver's side of the car and spoke with the people. Testified he didn't run. Pardon me? Who testified that he did not run? There's no evidence that he ran. My point is that he, the evidence is that he walked. He didn't run. We know that he went back and forth to the car. Right, the evidence is that he walked, that he did not run. What evidence is that? Lauren Clark's testimony stated that he walked to the car, spoke with the victims, came back to the car, walked back to the car, took something out from underneath the seat of the truck. When he first went over, he was speaking to the driver of the car, which was the female victim. When he went back. About walking. Yes. He walked back to the car. He retrieved something from underneath his seat in the truck and walked back to the passenger side of the vehicle. So that's what we have. They said he did walk. And that's the only indication of commonly, seems to me. Well, and I think that Lauren Clark's testimony that he wasn't speaking, he wasn't agitated. Lauren Clark asked him what he was doing. He didn't respond. The only person that was yelling at the scene was the defendant's sister, who, after the shooting, was screaming at him. And the defendant was telling everyone to get back in the car. His demeanor after the shooting appeared to be calm when he was insisting that everyone get back in the car. And the only person, the testimony at the trial was, the only person yelling was Ms. Cheryl Begay, his sister. The other evidence. That I have. Well, never mind. Go ahead. Can I ask you this? Is it fair to analyze this case, as your opponent does, that we really have no idea what happened at the car? We have no idea whether there was an argument, whether somebody said something, whether for some reason this man who had been drinking all evening and obviously the other people in the car were quite drunk. I don't know what state he was in alcoholically. He went over to a car. He came back, got a gun and shot somebody. That we don't know really what caused him to do that or what he thought. Or so that we could infer that he walked back to the car because he decided to kill people, thought it through on the walk and came back. We can easily infer that from the facts. Or we can infer, as your opponent suggests, that he got into a rage for some reason. As sometimes say, heat of passion, that that's also an inference that could be drawn. We don't really know what went on. But in that brief period when he walked back, he certainly had an attempt to kill somebody. But whether he was in an emotional state where he couldn't really premeditate or whether he was in an emotional state where he could, that you could draw either inference. The inference in your favor may be a more reasonable one. But that if you can draw either inference, that a jury can't really conclude beyond a reasonable doubt which inference should be drawn. I don't think that it is fair to, there is no fair inference of the defendant killed in the heat of passion. There is no evidence that would support that in the record. And in fact, when defense was asking for that instruction at trial, the district court specifically asked defense counsel to point to something in the record. And he conceded that he was unable to. Point any facts. Now, what facts are there that point the other way? Other than the fact that he went back, as we know, because he decided to kill somebody. We don't know what the motive is. We don't know what caused him to make that decision. Well, I think a lack of motive supports the premeditation theory because there was no motive. It appears that it was a cold-blooded killing. The facts that support premeditation in this case are, one, that the defendant flagged down this car, and it wasn't just a happenstance that they passed and immediately stopped. They passed each other twice before they stopped on the road. And the defendant's the one that was... Excuse me. But you said that every flash, they turned around. They each turned around and... Right. The second time they passed once, the second time they passed, the defendant flashed his lights, and that's when they stopped. The defendant... What about the other thing that bothers me? Is that he comes back, instead of if he premeditatedly killed this guy, just pointed at him and shoot him in the head. But instead of that, he shot, what, eight shots into the body, into the door, into the window. That is a pretty good indication that he was doing it in passion. I would not agree with that. I think that the testimony is that he walked back. He was three to four feet away. He was using a very high-powered rifle that, in some respects, is very difficult to control. He shot the defendant numerous times, and it's clear that he was targeting the defendant, which, again, I think shows premeditation, because he was not trying to shoot the driver, it appears, and the medical evidence... It shows more than intent. I'm sorry, what? Why does it show more than intent? It shows that he was thinking about the killing, that he was thinking about who he was going to kill, as opposed to just shooting into the car randomly, as if someone who was angry and upset might do. Well, I guess I'm not fully familiar with the facts like you two are, but his shots were into the door and into the window. Is that... The evidence is that the door was open. The passenger side door of the vehicle was open, I believe. You know, I can't remember. I think it was going to the driver's side. I'm sorry, the driver's side was open. The passenger side... Right, because the door wasn't open, the window wasn't open. He was shooting at the victim through the window. He shot from the driver's side? No, he shot from... He initially talked to the driver, who was the female. Then he went back and got the rifle, and when he came back, he went to the passenger side of the vehicle and shot into the vehicle and was clearly shooting at the passenger. I don't think there's any dispute that that's who he intended to kill, because the only bullets that hit the female victim was one that passed through the body of the male victim and one that appeared to be a straight bullet. The female was the driver, right? The female was the driver. Well, I know there was a lot of alcohol consumed that night, but I didn't get any sense that that was made any part of the killing. Was the alcoholism playable either in the government's case or in the defense? The amount of alcohol that was consumed at the party before the killing was brought before the jury. No, but I mean, was anything discussed or claimed that he was under the influence of alcohol and he didn't know what he was doing, for example? No, the defense at trial... I can't tell you right now if he received an intoxication instruction or not, but I assume he did because he did get a second-degree murder instruction. I can't tell you right now. I apologize. Well, that's okay. What was the defense? Was there any witnesses called to the defendant? No. And he did not testify? No, he did not. So the whole case is the government's case? Yes. And the whole issue is whether or not the government proved enough to support the first-degree murder conviction? Yes. It could be even narrower. It is whether they proved beyond a reasonable doubt premeditation. That's the real issue, right? That's what the defendant's alleging is. And the failure to give a lesser-included offense. Right. With regard to the lesser-included offense of voluntary manslaughter, again, the court specifically asked the defendant what evidence that had been submitted at trial would establish some sort of heat of passion or sudden argument. Based on adequate provocation, there was no evidence at all in the record with regard to that. And the cases are clear that there has to be at least some scintilla of evidence to support that argument. The way he was shooting at the car. If you were trying to kill somebody, I don't think you'd spray it all around like that. I don't think the testimony was that it was sprayed all around. And the passenger compartment of the vehicle is not that large. It wasn't a truck. It wasn't an SUV. It was a smaller railer sedan vehicle. And he shot eight, nine times, eight of them hitting his intended target. I don't think that he was spraying the bullets everywhere. Whether he sprayed everywhere or not, he was shooting nine times, and he hit him eight. Does that – you think of a cold-blooded, deliberately planned, premeditated thing. You go over, you're right next to somebody, and you shoot them. But if you just keep shooting in a rage, or uncontrollable rage, or whatever that makes you shoot eight or nine times, and you kill somebody else you don't intend to kill, that suggests that there may be some – Your Honor, that scenario is similar to the Free case, which is a Ninth Circuit case from 1988, where a defendant stabbed a fellow defendant 67 times, I believe, and refused to stop when ordered to by guards. The defendant's claim was self-defense, and he was convicted of first-degree murder, and this Court upheld that conviction based on the evidence. There's a lot of evidence about the past ill will. It was two prisoners who had a history of antagonism, drug selling. One said, I'm going to get the other. That's a lot different from a place we have no evidence. But I think that a past history with antagonism lends itself to a voluntary manslaughter instruction, more so than a case where there's no evidence of any history. There's no evidence that these victims were at the party. Was a voluntary manslaughter instruction asked for and not given in that case? In Free, I believe so, yes. In this case, there was no evidence of any prior connection between this defendant and the victims with regard to any argument. They weren't at the party. All the testimony was they hadn't been there, that they... Why do you think that makes it more likely that it's not an emotional response when there's no reason to do it, than if you have a history where you're threatening to kill somebody? You may have been thinking about it for a year. Well, clearly, there was probably a reason, and the government doesn't know what that reason is, and that's why no motive was presented at trial. We had some information that was not presented at trial, and we thought it was too prejudicial and not sufficiently corroborated. But there was nothing... There was no history between... The only information that was brought out was through Lauren Clark's testimony that the victim, the male victim, was not really liked in the community. That was brought out by the defense in cross-examination. And during redirect, it was brought out that he was not liked simply because he looked black. He didn't look like a Native American. Okay, thank you very much. Lauren Clark testified that he heard eight or nine shots. The medical examiner testified that there were six hits, that Mr. Begay apparently hit the passenger six times, not eight times, as Ms. Shiel has just represented to this court. Well, the fact that, you know, that a high-powered rifle has a kick to it, you make a big issue out of the missus? Your Honor, it's... The word she used was some scintilla, as all that's required to be required to give lesser-included offense instruction. That's at least a scintilla. As your colleagues on the panel, I agree with them, that it's some evidence that it's a shooting in a heat of passion, especially when you know the guy is an experienced shooter with caution weapons. Questions rather than statements. I understand you're not necessarily giving your final conclusion. Your Honor, as far as the free case, that was pure sufficiency. There was not a lesser-included offense issue in that case. And I don't think the case even indicates whether the voluntary manslaughter was given an answer to your question. But the chief thing I want to say in this rebuttal is that what I pointed out about the trial and about the briefing in this appeal continues to this argument today. At the trial, the government had no way of saying there was premeditation because they had no evidence of premeditation. They fudged that in their closing argument. In the briefs, they had no way of supporting the evidence of premeditation. They fudged that by claiming falsely that the demeanor was testified to as being calm and methodical. And in this argument this morning, they are fudging again. And here's what Ms. Shield just said to you. She said, I think the lack of, not quoting here, but paraphrasing, I think the lack of motive supports premeditation. Your Honors, from time immemorial, presence of motive has been considered evidence of premeditation. This idea that lack of motive somehow shows premeditation instead of heat of passion is entirely novel. And I don't think it makes a slight bit of sense. She also said she thinks the fact that Mr. Begay was targeting the defendant shows premeditation. That's going right back to the closing argument. That intent to kill is premeditation. Your Honors, you're not laypeople. You understand this. We understand this. That simply is not the law. And when those kind of measures have to be used to support a verdict and keep a man in jail for the rest of his life, I don't think it shows that any faith in that verdict is required by this court. If there are no questions. Thank you both counsel very much. Case will be submitted. The court will take a brief recess.
judges: Hug, Reinhardt, Bright